IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLAUDE FRAZIER AND ALL OTHER PERSONS SIMILARLY SITUATED | CIVIL ACTION NO: 05-1338-JJB-SCR | |
| VERSUS | SECTION: D | |
| PIONEER AMERICAS, LLC AND STATE OF LOUISIANA THROUGH THE DEPARTMENT OF ENVIRONMENTAL QUALITY (DEQ) | JUDGE BRADY<br><br>MAGISTRATE REIDLINGER | |

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2005 DEC 19 P 3:59

SIGN_____
BY DEPUTY CLERK

### MEMORANDUM IN SUPPORT OF MOTION TO REMAND

The court should grant the Motion to Remand filed by plaintiff, Claude Frazier individually and on behalf of all persons similarly situated (referred to hereinafter as "plaintiff"), for the reasons set forth herein:

**1.   *Defendants' have the burden of proof.***

It is the defendants' burden to prove that diversity under 28 U.S.C. 1332 exists. The Fifth Circuit has held that "[t]he burden of persuasion placed upon those who cry 'fraudulent joiner' is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, **the removing party must show that either there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court**; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." B. Inc. v. Miller Brewing Company, 663 F.2d 545, 549 (U.S. 5th Cir. 1981). [Emphasis added]

The Fifth Circuit has emphasized that the removing party bears the burden of proving a claim of fraudulent joinder, and that "in evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the



non-removing party. We are then to determine whether the party has any possibility of recovery against the party whose joinder is questioned." B. Inc., *Id.* at 550-551; citing: Ford v. Elsbury, 32 F.2d 931, 931; citing: Dodson v. Spiliada Maritime Corporation, 951 F.2d 40, 42 (U.S. 5th Cir. 1992); see also: Batton v. Georgia Gulf, (La. MD 5/6/03) 261 F.Supp.2d 575, 596.

The removing party thus bears a heaving burden of demonstrating fraudulent joinder. Batton, *Id.* **"Under the analysis required to examine a claim of fraudulent joinder, the court is not called upon to decide at this point whether or not plaintiffs will prevail, but rather only whether there exists at least a possibility that the plaintiffs may be able to recover against the State on their claims."** [Emphasis added] Batton, *Id.* at 602.

The defendants have not met their burden of proof that that DEQ was joined improperly. Other than their own self-serving allegations that DEQ was improperly joined, Pioneer Americas ("Pioneer") has produced no evidence to meet their burden. Pioneer has failed to show that there is no possibility plaintiff would have a cause of action against DEQ, and they have not alleged any type of fraud related to DEQ's joinder. They have simply not met the burden required under B. Inc. v. Miller Brewing Company, 663 F.2d 545, 549 (U.S. 5th Cir. 1981).

### 2. *Diversity does not exist.*

"A suit between a State and a citizen or corporation of another State is not between citizens of different States [and federal courts] have no jurisdiction of it." Batton v. Georgia Gulf, (La. MD 5/6/03) 261 F.Supp.2d 575, 581; citing: Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482 (1894). In regard to diversity jurisdiction, the Court must determine whether DEQ destroys diversity jurisdiction. DEQ is not a citizen. 28 USC 1332. Having a defendant who is not a citizen of any State destroys diversity. Batton, *Id.* at 581.

*3.    DEQ is not immune from this suit under La. R.S. 9:27898.1.*

DEQ is not immune pursuant to La. R.S. 9:2798.1. La. R.S. Art. 9:2781.1 (B) provides: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." The Louisiana Supreme Court has stated that La. R.S. 9:2798.1 applies to specific fact situations. Cormier v. T.H.E. Ins. Co., 98-2208 (La. 09/08/99) 745 So.2d 1; see also: Miscuraca v. City of Kenner, 01-707 (La. App. 5th Cir. 11/14/01) 802 So.2d 784.

"The Louisiana Supreme Court adopted a two-step test for determining when this exception applies. **First, the exception does not apply when a statute, regulation, or policy specifically prescribes a course of action, *i.e.*, where there is no element of choice or discretion involved.** Second, the exception only confers immunity where the discretionary action involves the permissible exercise of a policy judgment grounded in social, economic or public policy." [Emphasis added]. Williams v. Galliano, 96-0690 (La. App. 1st Cir. 6/20/97) 697 So.2d 294, 299; citing Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989) (on rehearing) (citing Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)).

Correspondingly, this Honorable Court was presented with a similar issue in Batton v. Georgia Gulf, (La. MD 5/6/03) 261 F.Supp.2d 575. In Batton, *Id.*, the plaintiffs filed suit in State Court against the Louisiana Department of Health and Hospitals ("LDHH") alleging that LDHH should have tested and warned citizens of excessive levels of arsenic in the drinking water. The defendants removed alleging that LDHH was improperly joined into the action to destroy diversity. Plaintiffs' filed a Motion to Remand arguing that LDHH had a duty to test and warn citizens of contaminated water. In that case, it was argued that LDHH was immune as well. The Court stated:

"if there is a specifically prescribed course of action for LDHH discretionary immunity is not available." Batton, *Id.* at 599; citing Hardy v. Bowie, (La. 1999) 744 So.2d 606. The Court held that LDHH was not immune, and ultimately remanded the case back to State Court.

The immunity set forth in La. R.S. 9:2781.1 does not apply if there is a statute, regulation or policy that specifically prescribes a course of action. DEQ's non-discretionary duties are set forth in the Environmental Regulatory Code, Title 33.

> The purpose of this Chapter is to establish procedures for notifying those members of the public whom the department determines are likely to be adversely affected by a release that poses a significant risk of adverse health affects. Title 33 § 101 (A)
>
> The department **shall** issue notice of a release that poses a significant risk of adverse health effects to persons whom the department reasonably determines are likely to be adversely affected by the release. Title 33 § 109 (B)

[Emphasis added]. The Code clearly states "[t]he public notice **required** by the Chapter . . ." (La ERC Title 33 § 109 (E)(1)). The Code goes further to provide a chart indicating the type, number, and procedure for such notices. Title 33 § 109 (D) and (E).

If there is a release that poses a significant risk of adverse side effects to persons who are likely to be adversely affected by the release, notice is required. Title 33 § 109 (B). DEQ granted variances to Pioneer through December 31, 2004 allowing them to emit excess levels of mercury into the atmosphere. In the subject case, excessive amounts of Mercury were allowed to be released into the atmosphere for at least 78 days at levels higher than Pioneer is permitted to release. Clearly, a significant risk of adverse health affects was present to those people in the general vicinity. The Material Safety Data Sheet (MSDS) provides that Mercury can be extremely dangerous. It provides that exposure to Mercury can cause the following: chemical burns to the respiratory tract, metal fume fever when inhaled, metallic taste, fever, chills, cough, weakness, chest pain, muscle pain, increased white blood cell count, vertigo, anxiety, depression, muscle incoordination, and emotional

instability, liver, kidney, reproductive, fetal, and permanent central nervous system damage, fatigue, weight loss, tremors, and personality changes.

DEQ did not provide any type of notice to anyone that excessive amounts of mercury were released from Pioneer. DEQ is therefore a proper party because they failed to meet their duty as provided in the Environmental Regulatory Code. As referenced above, the Code clearly provides that notice is REQUIRED. It is not discretionary. Therefore, La. R.S. 9:2781.1 does not apply. DEQ is not immune from this suit, and have been joined properly.

### 4. *The defendants' causation argument.*

The purpose of DEQ's notice requirement is two fold. Not only is DEQ supposed to warn the public of exposure so the public can seek shelter and prevent additional exposure, but its purpose is also to warn the public so they can seek immediate medical attention for what they have already been exposed. DEQ's failure to warn defeated both purposes of the notice requirement.

DEQ became aware of Pioneer's mercury emission on October 13, 2004. After their becoming aware of the increased amount of mercury being emitted, DEQ granted two variances to Pioneer allowing Pioneer to emit higher than permitted amounts of mercury into the atmosphere. The first variance was granted October 15, 2004, allowing them to emit high levels of mercury for an additional 16 days. The second variance was granted November 23, 2004, and allowed an additional 8 days of higher mercury emission.

Even as late as January 2005, DEQ's duty to warn the public of the high levels of mercury in the atmosphere may have still existed. An EPA mobile recording unit recorded an unusually high mercury reading or "spike" while monitoring for mercury near the Pioneer facility. This "spike" was recorded in January 2005. If elevated mercury levels were being revealed near Pioneer as late as January 2005 (months after Pioneer's initial self-reporting to DEQ), DEQ still had a duty to inform

5.  *DEQ did not participate in the removal proceeding, and are a necessary and proper party.*

Since DEQ is a proper party to this action (as discussed above), there is a procedural defect in the removal (other than diversity does not exist).  Under 28 USC 1446 (b), all defendants must participate in removal.  DEQ did not participate in Removal, nor have they filed a consent with the court.  It is now beyond the 30 day time period to remove or file a consent.

6.  *Pioneer Americas has not proven that the amount in controversy has been satisfied.*

In order for Diversity Jurisdiction to exist, the amount in controversy must be met.  Again, it is the removing party's burden to prove the Court has jurisdiction.  No evidence that the amount in controversy has been met has been presented.  The United States Fifth Circuit Court of Appeals has described the defendants' burden as follows:

> Subject to specific exceptions not here relevant, Louisiana prohibits a plaintiff from alleging or demanding a specific dollar amount of damages, limiting the prayer for relief to "such damages as are reasonable in the premises."  To accommodate the situation when the removal sought is from a Louisiana court and the subject matter jurisdiction is grounded in diversity of citizenship, we have modified the usual rule for determining whether the amount if controversy is present.  In such Louisiana situations, we permit the party seeking to maintain federal jurisdiction to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Grant, et al v. Chevron Phillips Chemical Co. L.P., case number 01-31350, 7-8, 2002 U.S. App. LEXIS 21266 (5th Cir. 10/11/02); citing Manguno v. Prudential Property and Casualty Ins. Co. 276 F.3d 720, 723 (5th Cir. 2002); see also:  De Aguilar v. Boeing Co., 47 F.3d 1404, 1409 (5th Cir. 1995).

The court stated that "the preponderance burden forces the defendant to do more than point to a state of law that might allow the plaintiff to recover more than what is pled.  The defendant **must produce evidence** that establishes that the actual amount in controversy exceeds [the jurisdictional threshold].  *Id.* at page 9; citing De Aguilar, 47 F.3d at 1412 [Emphasis added].

The Court further provided that the burden of proof may be satisfied in one of two ways:

1. by demonstrating that it is "facially apparent" from the petition; or

2. by setting forth the facts in controversy, preferably in the removal petition but sometimes by affidavit, that supports a finding of the requisite amount.

<u>Grant, et al v. Chevron Phillips Chemical Co. L.P.</u>, case number 01-31350, 7-8, 2002 U.S. App. LEXIS 21266 (5th Cir. 10/11/02); citing <u>Manguno v. Prudential Property and Casualty Ins. Co.</u> 276 F.3d 720, 723 (5th Cir. 2002); see also: <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1409 (5th Cir. 1995).

The defendants have produced no evidence as required. It is their burden to prove that the jurisdictional threshold is met because they are seeking to invoke Federal Jurisdiction. They have not done so.

**SIGNED** this ___19___ day of ___December___, 2005.


RESPECTFULLY SUBMITTED:

**TYLER & POSSA**
*A Professional Law Corporation*

By: _____
Joseph C. Possa
Louisiana Bar Roll 21032
John L. Tyler
Louisiana Bar Roll #19193
Stephanie M. Possa
Louisiana Bar Roll #28725
3225 Broussard Street
Baton Rouge, Louisiana 70808
Telephone (225) 343-8313
Telecopier (225) 344-8353

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all counsel of record by hand, by facsimile, or by placing a copy in the United States mail, postage prepaid, and properly addressed to:

Mr. Bradley Myers
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Post Office Box 3513
Baton Rouge LA 70821

Baton Rouge, Louisiana, this 19 day of December, 2005.

_____
Stephanie M. Possa