CLAUDE FRAZIER, ET AL

VERSUS

PIONEER AMERICAS L.L.C. &
STATE OF LOUISIANA, THROUGH
THE DEPARTMENT OF
ENVIRONMENTAL QUALITY

CIVIL ACTION

NO.: 05-1338-JJB

## RULING ON MOTION TO DISMISS

The matter before the court is a Rule 12(b)(6) motion to dismiss for failure to state a claim (doc. 41) filed by defendant The Department of Environmental Quality ("DEQ"). The plaintiffs ("Plaintiffs") consist of a putative class of citizens and they oppose DEQ's motion (doc. 46). DEQ has replied to Plaintiffs' opposition (doc. 48). The arguments in the parties' briefs reference arguments made by Plaintiffs and DEQ in support of and against, respectively, a previous motion to remand (docs. 7, 8, 9, 10). The court will carefully consider all of the arguments in these filings. As a final note, the co-defendant Pioneer Americas, L.L.C. ("Pioneer") has not filed anything in response to DEQ's motion to dismiss. The court's jurisdiction is based on removal under the Class Action Fairness Act, 28 U.S.C. §§1332, 1453.

### A. Legal Standard for Rule 12(b)(6) Motions

The court initially points out that a motion to dismiss for failure to state a claim is viewed with disfavor and very rarely is granted. *Lowery v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Alumni & Chem. Sales, Inc. v.*

*Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5h Cir. 1982). The federal rules require "notice pleading" instead of "fact pleading" and thus the plaintiff must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). The court should not grant a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his or her claim. See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). The court accepts all well-pleaded facts in the complaint as true and views them in a light most favorable to the plaintiff. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5h Cir. 1985). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

### B. Statement of Facts

Defendant Pioneer is a corporation authorized to do business in the State of Louisiana. Defendant DEQ is a Louisiana state agency charged with regulating air quality within the state. DEQ is in charge of air quality testing, reporting test results to the emissions owner and warning the public of harmful and toxic emissions. Plaintiffs are a putative class of all persons present in the vicinity of Pioneer's location in St. Gabriel, Louisiana at the time an alleged toxic and noxious substance was released and/or leaked from Pioneer. The present cause of action is based on

Pioneer's alleged release of mercury into the air which caused Plaintiffs' personal injuries.

Pioneer received a permit to release mercury into the environment during the period between August 1, 2004 to October 13, 2004. Its permit allowed a mercury release of 0.0014 lbs./hour. Pioneer admitted that it estimated its hydrogen processing equipment vent emitted between 0.1467 and 0.2206 lbs./hour during those months. In addition, a portion of this hydrogen stream was routed as fuel to two boilers. Pioneer estimated that the two boilers emitted between 0.0795 and 0.1025 lbs./hour of mercury during the relevant time period. By regulation, each boiler was permitted to emit only 0.003 lbs./hour of mercury. The complaint further alleges the following:

> Defendants Pioneer and DEQ had knowledge or should have known that mercury vapors escaped the confines of Pioneer Americas, LLC's property in Iberville Parish, and would certainly pose a health risk to humans in the vicinity of its release.
> ***
> Upon information and belief, DEQ had knowledge of these elevated mercury emissions levels on October 13, 2004 and negligently failed to report the emissions results and the evident danger and risk to human life and heath [sic], to the plaintiffs, despite its statutory and constitutional duty.
> ***
> The plaintiff and the class members had no knowledge of the presence of mercury emissions in their [sic] air.
> ***
> Both Pioneer Americas, LLC and DEQ individually, each owed [Plaintiffs] a duty to warn neighbors of the illegal mercury release, but failed to take any action to forewarn of the certain danger.
> ***
> The cause in fact of the damages herein sued upon was negligence and misconduct of the State of Louisiana, through DEQ, which resulted in the injuries

and damages the plaintiffs and the class members now suffer. The defendant [DEQ] is at fault within the scope, intent, and meaning of LSA-CC Article 2315, and other state laws in the following non-exclusive respects:

    a) Failure to properly report elevated mercury emissions results to the plaintiffs;

    b) Failure to warn the plaintiffs of the hazardous condition of the air;

    c) Failure to conduct adequate emissions testing at Pioneer Americas, LLC;

    d) Failure to protect the plaintiffs against disease from elevated mercury emissions; and

    e) Other negligent acts and acts of misconduct which will be proven at the trial of this matter.

### C. Discussion

The following question is raised: Can Plaintiffs state a cause of action in tort against DEQ for personal injuries sustained as a result of the actions or inactions of DEQ in regulating Louisiana's environment as required by certain statutory and codal obligations? This inquiry is really two-fold: (1) does a tort cause of action against DEQ, based on the facts as alleged in the petition, even exist? and (2) have Plaintiffs sufficiently pleaded a tort against DEQ?[1]

Before engaging in the following analysis, the court notes that neither the Louisiana Supreme Court, nor the Fifth Circuit, has directly spoken on the issue of whether an individual plaintiff may sue DEQ in tort for the alleged failure to issue a public notice regarding pollution in the environment. This fact alone does not preclude the court from guessing as to how the Louisiana Supreme Court would decide this motion. Since this case is a diversity case, the court is bound by the

---

[1] DEQ has waived any right it may have had to claim Eleventh Amendment immunity. *Memorandum in Support of Motion to Dismiss*, pg. 1.

principles under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). As part of the Erie doctrine, the court is required to make an "Erie-guess" as to how the Louisiana Supreme Court would decide the present motion. See Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 382 (5th Cir. 1998).

### 1.     The Parties' Arguments

DEQ posits that no such cause of action exists in Louisiana. It contends that its decision to notify the public about the excess mercury emissions released by Pioneer is not subject to attack. It argues that "[a]s a regulatory agency over environmental matters, DEQ has the right to proceed against Pioneer in whatever fashion DEQ deems appropriate. If Plaintiffs are unhappy with DEQ's exercise of its regulatory jurisdiction, they are not allowed to sue DEQ in tort for damages caused by Pioneer." Memorandum in Support of Motion to Dismiss, pg. 2. DEQ's argument is based on the "public trust doctrine" that protects the environment, under Louisiana Constitution Article IX, Section 1. DEQ maintains that Plaintiffs' dissatisfaction with DEQ's regulation of a site is remedied only through the political process. DEQ states that the only responsible party that Plaintiffs are permitted to sue is Pioneer.

Plaintiffs respond by pointing out that their lawsuit does not attack DEQ's regulatory decisions, but instead charges an action in tort. Plaintiffs distinguish tort actions for personal injuries from an action seeking to protect the environment. They argue that the Louisiana Environmental Quality Act, La. Rev. Stat. 30:2001

*et seq.*, is only intended to apply to claims against an entity for harm to the environment. They posit that this legislative scheme was not intended to proscribe individuals from making personal injury claims for damages. Plaintiffs distinguish the present lawsuit from a "citizens suit" under La. Rev. Stat. 30:2026.

### 2. Merits of the Motion

#### a. Does a Claim in Tort Exist Under the Given Facts?

Louisiana's public policy regarding protection of its natural resources pre-dates the current version of the state constitution. <u>In re Am. Waste & Pollution Control Co.</u>, 588 So. 2d 367, 372 (La. 1991). In 1974, the constitution was amended and Article IX, §1 was adopted. *Id.* That provision was intended to continue "the 'public trust doctrine ... [which] mandate[d] the legislature to enact laws to implement [the] policy'" of protecting the state's environment. *Id.* (*quoting* <u>Save Ourselves v. La. Envtl. Control Com'n</u>, 452 So. 2d 1152, 1154 (La. 1984)). The legislature responded by enacting the Environmental Quality Act along with the creation of DEQ. *See id.* The legislature at the time found that "[t]he maintenance of a healthful and safe environment for the people of Louisiana is a matter of critical state concern." La. Rev. Stat. 30:2002(1). Maintaining clean air was one of the stated goals of the Act. *Id.* at 30:2002(2).

The Act includes most of the state's pollution control and environmental remediation laws. KENNETH MURCHINSON, "*Enforcing Environmental Standards Under State Law: The Louisiana Environmental Quality Act,*" 57 LA. L. REV. 497,

499 (1997). One of the legislatively enacted mandates DEQ must abide by is the "public notice" requirement. The Louisiana Environmental Regulatory Code, Title 33 provides in pertinent part, "[t]he purpose of this Chapter is to establish procedures for notifying those members of the public whom the department determines are likely to be adversely affected by a release that poses a significant risk of adverse health effects." Title 33, §101(A). To carry out this stated purpose, the code further provides that "[t]he [DEQ] shall issue notice of a release that poses a significant risk of adverse health effects to persons whom the department reasonably determines are likely to be adversely affected by the release." Title 33, §109(B).

In the case at bar, Plaintiffs have alleged that DEQ's failure to warn them, being the public, was a factual and legal cause of their injuries. DEQ argues that even if such were the case, DEQ's regulatory determinations are not "civil matters" over which district courts have original jurisdiction. DEQ primarily relies on the case of *In re Am. Waste & Pollution Control Co.*.

The Louisiana Supreme Court stated in *In re Am. Waste*,

> We find that DEQ determinations are not civil matters within the meaning of La.Const. Art. V, §16(A). They are therefore not within the scope of the district court's constitutional grant of original jurisdiction, because waste disposal and water discharge permitting did not exist as a traditional judicial civil matter in 1974 and has never been delegated in the first instance to the judicial branch, and because such matters were thereafter constitutionally delegated by the Legislature to the DEQ within the executive branch.

*In re Am. Waste*, 588 So. 2d at 373. At first glance, this language seems to support

DEQ's argument in that (1) Plaintiffs are challenging the determination by DEQ to refrain from issuing a public notice, (2) there is nothing to suggest that this determination was traditionally a civil matter prior to 1974, and (3) issuing a public notice of this sort was never delegated to the judicial branch, but instead delegated to the executive. Thus it seemingly follows that the court has no jurisdiction to consider DEQ's failure to issue a public notice–which is of course one of DEQ's regulatory duties.

However, the court believes this sort of logical connection is too broad. *In re Am. Waste* did not involve personal injuries. The court in that case reviewed the constitutionality of La. Rev. Stat. 30:2024. That section mandated that appeals from final decisions by DEQ must bypass the state district court and be lodged directly in the First Circuit Louisiana Court of Appeal. *Id.*; La. Rev. Stat. 30:2024. The court was called upon to decide whether the statute was in contravention of La. Const. Article V, §16(A), which provided the district courts with "original jurisdiction over all civil and criminal matters." *In re Am. Waste*, 588 So. 2d at 368. In concluding that a DEQ determination was not a "civil matter," the court held that the legislature was permitted to vest an appeal from a DEQ order in the court of appeal. *Id.* at 372-373.

In its discussion, the court also considered whether private citizens have a right to bring suit in the district courts in environmental permitting matters. *Id.* at 372. The court found that prior to the 1974 constitutional amendment adopting

8

Article IX, §1, private citizens enjoyed no right to bring suit in the judicial branch in environmental matters. *Id*. However, the 1973 Constitutional Convention's Natural Resources and Environment Committee delegated protection of the environment to the legislature. *Id*. The legislature responded by enacting laws granting private citizens a right to litigate environmental matters. *Id*. The legislature passed La. Rev. Stat. §30:2024(c) (the appeal provision at issue in *In re Am. Waste*) and La. Rev. Stat. 30:2026 (the citizens suit provision). *Id*. at 372-73. The issue of whether private citizens could sue DEQ in tort was never raised.

It is important to consider the context in which the Louisiana Supreme Court decided *In re Am. Waste*. The court was concerned with the rights of parties to bring claims pursuant to the Environmental Quality Act, and to litigate matters *regarding the environment*. The legislature delegated a specific duty to the executive when it created the Act and the DEQ. That duty was limited to protecting the *environment* from harm. See *id*. at 372. In fact, the stated purpose of the Act is to "maintain a healthful and safe environment in Louisiana ...." La. Rev. Stat. 30:2003(A); *see also id*. at 30:2003(B) ("In order to accomplish the[] goals [of the Act] ... it is necessary to ... preserve, protect, and enhance the quality of the environment of Louisiana."). The court is not persuaded that the Louisiana Supreme Court would hold that every DEQ determination, even if its consequence does not result in harm to the environment, but rather results in harm to individuals, cannot constitute "civil matters." The court's *Erie*-guess is that the Louisiana

Supreme Court would limit its holding in *In re Am. Waste* to lawsuits charging *harm to the environment*, which stem from DEQ determinations. Plaintiffs' lawsuit sounds in tort, not in one to protect the environment from harm.

This reasoning is supported by *Pope v. State*, 792 So. 2d 713 (La. 2001). The court in *Pope* stated that "the district courts historically have exercised original jurisdiction in tort actions as civil matters, and were doing so when the 1974 Constitution was adopted with the broad language 'all civil and criminal matters' in Section 16(A) of Article V." *Pope*, 792 So. 2d at 719.

The court does not agree with DEQ that reliance on *Pope* begs the question because it is premised on Plaintiffs having a tort claim in the first instance. DEQ contends that *Pope* "did not involve issues relating to environmental damage, which by their nature implicate the Public Trust Doctrine, a constitutional provision specifically giving jurisdiction over issues concerning the environment to the Legislature, who in turn has delegated jurisdiction to DEQ." *Reply Memorandum of DEQ in Support of Motion to Dismiss*, pg. 4. The court agrees that the state legislature has delegated to DEQ jurisdiction over issues *concerning the environment*. However, the present lawsuit does not allege any actions or inactions by DEQ that caused harm to the environment. The legislature delegated to DEQ a duty to protect to the environment, *In re Am. Waste*, 588 So. 2d at 372, and therefore those decisions by DEQ are not "civil matters" over which district courts may assert original jurisdiction. However, that is not what is going on here.

Personal injuries are alleged. Tort actions, unlike actions challenging DEQ's decisions in protecting the environment, have been considered "civil matters" well-before the 1974 constitutional amendments. *Pope*, 792 So. 2d at 719.

In this sense, the court does not agree with DEQ's argument that it "is being sued for damages solely on account of alleged deficiencies in the way [it] regulated the site." *Reply Memorandum in Support of DEQ in Support of Motion to Dismiss*, pg. 2. Plaintiffs' lawsuit is not a "collateral attack upon DEQ's exclusive regulatory jurisdiction." *Id*. Instead, Plaintiffs' lawsuit is a "direct attack" on DEQ's alleged negligence in failing to discharge its duty to warn Plaintiffs of the excessive release of mercury into the air. In determining whether DEQ determinations are shielded from tort lawsuits, the key inquiry should focus on the harm sought to be protected by the DEQ decision.

The court finds *Batton v. Ga. Gulf*, 261 F. Supp. 2d 575 (M.D. La. 2003) to be helpful in determining whether a tort action in this case exists. In *Batton*, the plaintiffs filed an action, that sounded in tort, against the Louisiana Department of Health and Hospitals ("LDHH") claiming damages from arsenic in the water supply. *Id*. at 579. Specifically, the plaintiffs alleged LDHH "failed to warn anyone of the arsenic levels despite being under an alleged duty to test the water supply and warn citizens of contamination." *Id*. One of the arguments LDHH made was that the plaintiffs' claims could only arise from the Safe Drinking Water Act ("SDWA"),[2] and

---

[2] 42 U.S.C. §300f, *et seq*.

that the SDWA could not be used as a source of duty for private causes of action. *Id.* at 597.

In analyzing the issue of whether a plaintiff could state claim in tort against LDHH, the court first noted that the SDWA had a savings clause that provided, "'nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief.'" *Id.* (*quoting* 42 U.S.C. 300j-8(e)). The savings clause was included in the citizens suit provision of the SDWA. *See* 42 U.S.C. §300j-8 (Citizen's civil action"). The *Batton* court held that the plaintiffs' lawsuit was grounded in tort, and that "[a]ny direct or indirect references by the plaintiffs to the SDWA, are ... 'only to show that defendants breached their duty of care and are, therefore, liable under *state law*.[']" *Id.* at 598. Thus, the plaintiffs' lawsuit did not arise out of the SDWA, but rather arose out of state law.

Like the SDWA, the Louisiana Environmental Quality Act has a citizens suit provision that includes a savings clause: "nothing herein shall be construed to limit or deny any person's right to injunctive or other extraordinary and ordinary relief under the Louisiana Code of Civil Procedure or otherwise under Louisiana law ...." La. Rev. Stat. 30:2026(c). Moreover, La. Rev. Stat. 30:2026(D) states, "the enforcement, procedures, and remedies herein provided for shall be in addition to any such procedures and remedies authorized under the laws of this state." It is

true that <u>Batton</u> did not involve the DEQ and was in the context of a discussion concerning fraudulent joinder. Nevertheless, the court finds it persuasive in determining whether Plaintiffs can state a claim in tort. Similar to the reasoning in <u>Batton</u>, any direct or indirect references by Plaintiffs to the Environmental Quality Act, or DEQ's public notice requirement under the Environmental Regulatory Code, is only to show that DEQ breached its duty of care and is therefore liable under state tort law.

The second case DEQ relies on is <u>Sierra Club v. Givens</u>, 710 So. 2d 249 (La. Ct. App. 1997). That case involved a citizens suit, pursuant to La. Rev. Stat. 30:2026, against DEQ. In <u>Sierra Club</u>, the court held that private individuals could not bring a citizens suit against DEQ. <u>Sierra Club</u>, 710 So. 2d at 250. Plaintiffs' suit in the case at bar is not a citizens suit. DEQ does not dispute this. Thus, the court does not find <u>Sierra Club</u> to be particularly persuasive.

The court holds that an action in tort against DEQ based on these facts may exist. Attention now turns to the second part of the inquiry, namely whether Plaintiffs have met their Rule 8(a)(2) requirement and stated a claim under La. Civ. Code art. 2315.

### b.    Did Plaintiffs Sufficiently Plead a Tort?

La. Civ. Code art. 2315(A) states, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Louisiana employs the "duty-risk" analysis, which consists of a four-prong test:

I.  Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e. was it a cause-in-fact of the harm which occurred?
II. Did the defendant owe a duty to the plaintiff?
III. Was the duty breached?
IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991).

### i. Cause in Fact

When multiple causes of the alleged injuries are present, courts employ the "substantial factor" test. *Id*. at 1042. "Under this test, cause in fact is found to exist when the defendant's conduct was a 'substantial factor' in bringing about [the] plaintiff's harm." *Id*. In deciding cause in fact, it is of no importance whether or not the defendant's conduct was lawful or unlawful. *Id*. In the case at bar, the court finds that the petition sufficiently pleads that DEQ's failure to issue a public notice of pollution by Pioneer was a substantial factor in bringing about Plaintiffs' alleged injuries. Although Pioneer's pollution, if true, is also a cause in fact of Plaintiffs' alleged injuries, there are strong inferences to believe that had DEQ discharged of its duty to issue a public notice, Plaintiffs could have taken the proper steps to avoid their injuries.

### ii. Duty

Unlike the factual inquiry of cause in fact, the issue of duty is a legal one, asking "whether the plaintiff has any law - statutory or jurisprudential - to support his claim." *Id*. In the present case, the Louisiana Environmental Regulatory Code, Title

33, §109(B) states, "[t]he DEQ shall issue notice of a release that poses a significant risk of adverse health effects to persons whom [DEQ] reasonably determines are likely to be adversely affected by the release." Thus, DEQ's duty is legislatively mandated. That DEQ has discretion in determining whether Plaintiffs were likely to be adversely affected by the release of mercury into the air is not a matter the court will consider on a motion to dismiss. That inquiry is more suitable in later stages of the litigation, as in a motion for summary judgment or trial. At this stage, Plaintiffs have sufficiently pleaded the duty element.

### iii. Breach of Duty

Plaintiffs have alleged that DEQ knew of the excessive release of mercury by Pioneer and that it failed to warn them of that hazardous condition. The court finds that Plaintiffs have sufficiently pleaded a breach of duty.

### iv. Scope of Duty

Lastly, the court must consider whether Plaintiffs' alleged injuries fall within the scope of DEQ's duty to issue a public notice. *Roberts*, 605 So. 2d at 1044. When multiple causes in fact of damages are evident, as in the case at bar, the scope of duty inquiry focuses on "(1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain circumstances which follow an act of negligence." *Id*. at 1046.

In the case at bar, the alleged breach of duty is the failure of DEQ to issue

a public notice regarding the release of a pollutant that poses a significant risk of adverse health effects to members of the public. La. Environmental Regulatory Code, Title 33, §109(B). Here, the law that imposes the duty on DEQ is intended to safeguard the public from the exact sort of harm the Plaintiffs allegedly suffered. In this case, DEQ's determination affected not the environment, or at least no such allegation was made, but rather affected the health of the individual plaintiffs. *Cf. In re Am. Waste*, 588 So. 2d at 372 (stating that DEQ determinations regarding matters that go toward protecting the environment are not considered "civil matters"). The risk anticipated by a breach of the duty to issue a public notice is harm to the public. Thus, the court finds that the alleged failure by DEQ to issue a public notice falls within the universe of risks sought to be protected by imposition of DEQ's legal duty under the Environmental Regulatory Code. Title 33, §109(B).

### c. Miscellaneous Discussion

The court considers two final points. First, the court has considered DEQ's argument that in holding that private individual's have a right to sue DEQ in tort, polluters would have an incentive to "game the system" and shift some liability to DEQ by de-emphasizing pollution reports to DEQ that would otherwise highlight the need for public notice. The court responds by stating that any such incentive will be severely tempered by Louisiana's use of comparative fault in tort actions. *See* La. Civ. Code Art. 2323, 2324. Under Art. 2324, "[a] joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any

other person for damages attributable to the fault of such other person ...."

Secondly, the court has considered DEQ's argument that "[t]he state cannot and should not bear the costs associated with a private profit making venture." La. Rev. Stat. 30:2271(4). Permitting Plaintiffs to sue DEQ in tort does not contravene this policy. DEQ will only be liable if it is at fault. Thus DEQ will not really bear the cost of Pioneer's profit making venture if Pioneer is ultimately found to have caused the pollution. Pioneer will bear those costs. DEQ will only bear the costs for which it should be charged, specifically those costs that it caused through its own fault, if any. *See* La. Civ. Code art. 2324.

Accordingly, it is ordered that DEQ's motion to dismiss for failure to state a claim (doc. 41) is DENIED.

Baton Rouge, Louisiana, November 6th, 2006.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA